UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BISCOTTI INC., <br> Plaintiff, <br> v. <br> MICROSOFT CORPORATION, <br> Defendant. | Case No. 17-mc-80010-KAW <br><br> **ORDER REGARDING MOTION TO COMPEL** <br> Re: Dkt. No. 1 |

On January 13, 2017, Petitioner Biscotti Inc. filed a motion to compel compliance with a subpoena issued against Respondent Twitch Interactive, Inc. (Pet.'s Mot., Dkt. No. 1.) The subpoena was issued in connection with *Biscotti Inc. v. Microsoft Corp.*, Case No. 2:13-cv-1015-JRG-RSP, a patent infringement case currently pending in the Eastern District of Texas. (*See* Alper Dec., Exh. 2, Dkt. No. 1.) The Court deems the matter suitable for disposition without hearing pursuant to Civil Local Rule 7-1(b). Having considered the papers filed by the parties and the relevant legal authority, the Court GRANTS IN PART and DENIES IN PART the motion to compel, for the reasons set forth below.

## I. BACKGROUND

Petitioner owns Patent No. 8,144,182 ('182 patent), which "relates to a video communication system, which, at a high level, permits video communication between multiple video communication devices." (Pet.'s Mot. at 5; Alper Dec., Exh. 1.) Petitioner filed a lawsuit against Microsoft Corporation ("Microsoft"), alleging that Microsoft's Xbox One and Xbox One S gaming consoles (collectively, "Xbox One Systems") infringe on the '182 patent. (Pet.'s Mot. at 5.) Respondent developed the "Twitch" application; after a player installs the Twitch application to an Xbox One System, the player can "broadcast his or her gamestream, including a video of

himself or herself--captured by a component of the Xbox One Systems called the Kinect--to third parties interested in watching that gamestream." (*Id.*) When installed on a Xbox One System, the Twitch "application and related infrastructure . . . comprise[] an important part of a system that infringes the '182 patent." (*Id.* at 5-6.)

On November 1, 2016, Petitioner served Respondent with a subpoena, which included ten document requests and twelve topics for deposition. At issue are the following:

**Request No. 9:**

All Documents and things related to: (i) financial data, projections, or estimates of the value of the game streaming market; and (ii) Twitch's market share of the game streaming market relative to its competitors, including without limitation Beam.pro, YouTube Gaming, Azubu, Dingit, and Hitbox.

**Request No. 10:**

All Documents and things related to the Twitch functionality permitting broadcasting of video from a video capture device, including without limitation web cameras, PlayStation Camera, and Kinect, the decision to include this functionality in Twitch, and any documents relating to the value of the functionality to Twitch broadcasters or viewers.

**Topic No. 11:**

Financial data, projections, or estimates of the value of the game streaming market, and Twitch's market share of the game streaming market relative to its competitors, including without limitation Beam.pro, YouTube Gaming, Azubu, Dingit, and Hitbox.

**Topic No. 12:**

The Twitch functionality permitting broadcasting of video from a video capture device, including without limitation web cameras, PlayStation Camera, and Kinect, the decision to include this functionality in Twitch, and the value of the functionality to Twitch broadcasters or viewers.

(Alper Decl., Exh. 2 at 7, 9.)[1]

---

[1] Petitioner's motion also concerns Deposition Topic No. 3, which related to "Features, functionality, and operation of any version of the Twitch application compatible with Microsoft Corporation's Xbox 360, Xbox One, and Xbox One S." (Alper Decl., Exh. 2 at 8.) On the same day the instant motion was filed, Respondent agreed to provide testimony in response via either a declaration or a four-hour deposition. (Resp.'s Opp'n at 8, Dkt. No. 8.) In its reply, Petitioner confirmed this production, and that the "remaining . . . issue[s] in this motion are two 'non-technical' document requests and two related 'non-technical' topics for deposition testimony." (Pet.'s Reply at 1, Dkt. No. 15.)

2

Respondent answered these discovery requests with objections, including that the requests: (1) were "overly broad and unduly burdensome in that it seeks '[a]ll Documents and things,'" (2) "call[ed] for information that is not relevant to any claim or defense in the underlying action or not reasonably likely to lead to the discovery of admissible evidence," (3) were "not proportional to the needs of the case, and the burden or expense of discovery sought outweighs its likely benefit." (Pet.'s Mot. at 7-10.) The parties then conferred telephonically on November 21, 2016. (Shamilov Decl. ¶ 8, Dkt. No. 8-1.) During this call, Petitioner stated that it was interested in receiving documents in response to Request Nos. 3 (source code), 4 (file structure, software, or organization of source code), and 5 (use statistics relating to the Twitch application). (Shamilov Decl. ¶ 8.)

The parties continued to meet and confer on the matter. The parties dispute, however, whether Petitioner raised Requests Nos. 9 and 10 and Topic Nos. 11 and 12 prior to January 10, 2017. Respondent contends that on January 10, 2017, Petitioner for the first time requested a non-technical deposition on Topic Nos. 11 and 12, and that on January 11, 2017, "resurrected a request that had been dormant since the parties' first telephonic conference in November: that it also intended to seek non-technical documents subject to Request Nos. 9 and 10." (Resp.'s Opp'n at 4-5.) Petitioner in turn points to Respondent's January 13, 2017 e-mail, which states Respondent had explained "multiple times during [their] previous discussions, document requests 9 and 10 and deposition topics 11 and 12 are overbroad, irrelevant, and disproportional to the issues in the case . . . ." (Pet.'s Reply at 8, Dkt. No. 15; Shamilov Decl., Exh. 11.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs discovery propounded by subpoena. The scope of discovery that can be requested through a subpoena under Rule 45 is the same as the scope of discovery permitted under Rule 26(b). Fed. R. Civ. P. 45 advisory committee note (1970) ("[T]he scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules."); Fed. R. Civ. P. 34(a) ("A party may serve on any party a request within the scope of Rule 26(b).").

Rule 26(b) permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at trial

3

if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The Court, however, may limit discovery if (1) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive, (2) the party seeking discovery has had ample opportunity to obtain the information sought, or (3) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2)(C).

### III. DISCUSSION

#### A. Relevance

##### i. Document Request No. 9 and Deposition Topic No. 11

The parties dispute whether Petitioner's Document Request No. 9 and Deposition Topic No. 11 are relevant to the underlying litigation. Document Request No. 9 and Deposition Topic No. 11 seek information on "the value of the game streaming market and Twitch's market share in the same." (Pet.'s Mot. at 12.)

Petitioner argues that these requests are relevant because "[t]he value Twitch places on its game streaming technology, which forms part of Microsoft's infringement, relates to the value of the technology claimed by the '182 patent and, thus, damages for Microsoft's infringement." (*Id.*) Similarly, "Twitch's market share vis-á-vis its competitors, which do not all offer comparable technology to Twitch (including its ability to capture the video of game player), provides a further indication of the value of the '182 patented inventions." (*Id.*) Respondent counters that the value of its technology to Respondent or its market share cannot be relevant to damages between Petitioner and Microsoft, given that Petitioner's damages claim is against Microsoft, not Respondent. (Resp.'s Opp'n at 9.) Further, Respondent contends that the request is overbroad because it "seeks to compel information relating to the value of Twitch's technology worldwide and across *all* platforms, which includes Twitch's primary platform (its website), as well as, for example, iPhone, Android, Nvidia Shield, Chromecast, Fire TV, and PlayStation--none of which are accused of infringement by Biscotti." (*Id.* at 10; *see also* Shamilov Decl., Exh. 12 (requesting

4

"documents and testimony discussing value of the game-streaming market and Twitch functionality as a whole").) This is particularly the case when "only a tiny fraction of users view Twitch content using an Xbox." (Resp.'s Opp'n at 10.)

The Court agrees with Petitioner that the value Respondent places on game streaming technology and its market share indicates the value of the technology (which when used on the Xbox One Systems, allegedly infringe on Petitioner's patent) in comparison to technologies that do not infringe on Petitioner's patent. The value of this technology is relevant to Petitioner's damages, as it shows what value Petitioner's patent adds to traditional game streaming. Thus, such information goes to damages. The Court disagrees with Petitioner, however, that the value and market share should be untethered from the Xbox One Systems. While Petitioner points out that the '182 patent can be infringed where video streams originating from Xbox One Systems are viewed on other platforms, Petitioner does not otherwise explain the relevance of the value of Respondent's technology across *all* platforms, regardless of whether the game streaming is viewed on *or* originated from the Xbox One Systems. Therefore, the Court concludes that Document Request No. 9 and Deposition Topic No. 11 must be limited to requested information relating to the Xbox One Systems. This includes the value and market share that relate to both video streams that are viewed on Xbox One Systems and video streams that originate from the Xbox One Systems.

### ii. Document Request No. 10 and Deposition Topic No. 12

The parties dispute whether Petitioner's Document Request No. 10 and Deposition Topic No. 12 are relevant to the underlying litigation. Document Request No. 10 and Deposition Topic No. 12 seek information on "the Twitch functionality permitting broadcasting from a video capture device, including without limitation web cameras, Playstation Camera, and Kinect, the decision to include this functionality in Twitch, and any documents relating to the value of the functionality to Twitch broadcasters or viewers."

Petitioner argues that such information "directly relate[s] to damages in this case." (*Id.*) Further, "[Respondent's] decision to include the video-overlay features of its service and the value of those features to its users underscores the value of the patented technology." (Pet.'s Reply at 4.)

5

Respondent replies that the value to itself and its users is irrelevant to damages because what is at issue is the value of the functionality to Microsoft and Microsoft's users. (Resp.'s Opp'n at 9-10.) Respondent also notes that it has already informed Petitioner that it "does not track or have data reflecting the value of broadcasting with camera input, nor has it performed any analysis on the subject." (*Id.* at 10.)

First, with respect to Respondent's decision to include the video-overlay, this goes to Petitioner's calculation of damages as it explains why Respondent believed there was worth in adding such a feature to the Twitch application. This worth goes to the value of the features to Respondent's users, which in turn informs an estimate of damages to Petitioner for the infringement.

Second, as to the value of the functionality, these requests are limited to the value of the functionality to broadcasters or viewers. Petitioner does not seek information relating to the actual value that Respondent itself places on the functionality. This is consistent with the wording of Request No. 10 and Topic No. 12, which seeks information "relating to the value of the functionality to Twitch broadcasters or viewers." (Alper Decl., Exh. 2 at 7, 9.) Petitioner also seems to disclaim interest in information relating to the value that Respondent places on the functionality in its reply brief, stating that to the extent Respondent stated that the value of the technology to Respondent is not relevant because Microsoft is accused of infringement, "[Respondent] mischaracterizes [Petitioner's[ requests, which seek information on the 'value of the functionality to Twitch broadcasters or viewers' not merely the value of '[Respondent's] technology to [Respondent]." (Pet.'s Reply at 4; *see also id.* ("[Petitioner] simply seeks information on the value this . . . technology provides to [Respondent's] *users*") (emphasis added).[2]

---

[2] The Court notes that Petitioner's statements in its reply brief are contrary to its opening brief, where when explaining Request No. 10 and Topic No. 12, it stated that the value *Respondent* places on the specific broadcasting functionality at issue "directly relate[s] to damages in this case." (Pet.'s Mot. at 12.) In its reply brief, however, Petitioner focuses solely on the value of the functionality to broadcasters or viewers, and characterizes Respondent's relevance arguments about the value of the technology to Respondent itself as "a strawman." (Pet.'s Reply at 4-5.) Accordingly, the Court takes Petitioner at its word and reviews Request No. 10 and Topic No. 12 as seeking only the value of the functionality to broadcasters or viewers, not to Respondent itself.

6

The Court finds that the information sought by Request No. 10 and Topic No. 12 is relevant, to the extent it seeks information limited to the Xbox One Systems users and broadcasters. The decision to include the functionality in the Twitch application is relevant to the value of the technology. Further, as Petitioner points out, the users or broadcasters that are the subject of this request "are also users of Microsoft's infringing Xbox One Systems," and "the value placed on the Twitch video-overlay features by users of the Xbox One Systems *is relevant* to the issues in the underlying litigation." (Pet.'s Reply at 5.) Again, however, these requests must be limited only to users of Microsoft's infringing Xbox One Systems, as Petitioner does not explain the relevance of the value of this functionality to non-Xbox One Systems users.[3] Of course, to the extent that Respondent does not have information or analysis regarding the value of broadcasting with camera input, Respondent cannot be compelled to provide information or analysis that it does not already possess. (*See* Resp.'s Opp'n at 10.)

**B.  Burden**

Respondent argues that the motion to compel should be denied because complying with the disputed requests will require Respondent "to undertake a burdensome and time-consuming analysis to quantify and aggregate the value of its technology across all platforms and all streaming content." (Resp.'s Opp'n at 11.) The Court rejects this argument. First, as discussed above, the Court finds that the information sought by the disputed requests must be limited only to the Xbox One Systems, which reduces any such burden. Second, Respondent is required only to provide information that is already in its possession, custody, or control; it is not required to create new documents or perform new analyses. *See* Fed. R. Civ. P. 45(a)(1)(A)(iii). Thus, again, if Respondent does not have the information, it is not required to produce it.

**C.  Other Source**

Respondent contends that the information sought could have been obtained from Microsoft or public sources. The Court disagrees, as the requests at issue concern the value to Respondent's

---

[3] Presumably, there would be no value to such users as Petitioner only alleges that the Twitch application infringes on Petitioner's patent when used on the Xbox One Systems, not on any other system. (*See* Resp.'s Opp'n at 10.)

7

users and Respondent's market share, information that is not clearly available to anyone other than Respondent. For example, while Respondent points to various articles that identify some market shares, it is not limited to the Xbox One systems, which is what is relevant to the instant case. Similarly, while Microsoft owns one live streaming service, this does not automatically mean that Microsoft possesses information on Respondent's market share, relative to all other streaming services including YouTube Gaming, Azubu, Dingit, and Hit-box. The Court therefore finds that Respondent has not adequately shown that the information can be obtained from a party or a public source.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Petitioner's motion to compel. Although the Court finds that Respondent must respond to the requests at issue, the requests are limited to the extent they relate to the Xbox One systems only. Because the Court grants in part and denies in part the relief sought, the Court declines to award attorney's fees to either of the parties.

IT IS SO ORDERED.

Dated: April 19, 2017

_____
KANDIS A. WESTMORE
United States Magistrate Judge